[Cite as *FitzGerald v. FitzGerald*, 2020-Ohio-5442.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Margaret A. FitzGerald n/k/a Korfhage                Court of Appeals Nos. WD-19-027
                                                                                         WD-19-074
      Appellee

                                                                            Trial Court No. 2017DR0012
v.

Sean P. FitzGerald                                                **DECISION AND JUDGMENT**

      Appellant                                       Decided:  November 25, 2020

* * * * *

Donna Engwert-Loyd and Adam M. Borgman, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This is a consolidated appeal filed by appellant, Sean FitzGerald, from the April 4, 2019 and September 11 and 23, 2019 judgments of the Wood County Court of Common Pleas, Domestic Relations Division, after he was found in contempt of court. For the reasons that follow, we reverse the trial court's judgments and vacate the findings of contempt.

**{¶ 2}** Appellant sets forth three assignments of error:

Assignment of Error One: The finding of direct, criminal contempt is not supported by the evidence and is contrary to law and public policy.

Assignment of Error Two: The 30-day jail sentence imposed for contempt is disproportionate to the alleged offense and is overly punitive.

Assignment of Error Three: The September 11 and 23 civil, indirect contempt orders are not supported by the evidence, are contrary to law, and violate Due Process.

## Facts

**{¶ 3}** Appellant and appellee, Margaret FitzGerald, were married in July 1987. On January 18, 2017, appellee filed a complaint for divorce. A divorce was granted on November 14, 2019. During the course of the divorce case, appellant was found in contempt of court. He now appeals from those contempt orders.

## Assignment of Error One

**{¶ 4}** Appellant contends the first contempt order was issued on April 4, 2019, and the trial court found him in direct, criminal contempt of court, and sentenced him to 30 days in jail. Appellant argues this finding is not supported by the evidence.

**{¶ 5}** By way of background, certain events occurred prior to the court entering the April 4, 2019 contempt order, including the following.

2.

**Relevant Events**

{¶ 6} On February 28, 2019, Attorney Martin Mohler, who represented appellant and appellee's eldest son, I.F., a minor, in the divorce proceeding, filed a motion requiring, inter alia, the parents to facilitate tutoring for I.F.

{¶ 7} On March 6, 2019, Mohler filed a motion for attorney fees.

{¶ 8} On March 11, 2019, appellant, who is a lawyer, filed a pro se objection to Mohler's motion, as well as a motion to compel Mohler to return the excessive fees he charged and collected. In appellant's 15-page filing, he alleged Mohler had charged excessive and unreasonable fees, in violation of Prof.Cond.R. 1.5. Appellant requested, for relief, that "the court should order Mr. Mohler to escrow or post a bond in an amount equal to the total fees he has charged and seeks to collect pending the outcome of the grievance being filed the [sic] with the Office of Disciplinary Counsel concurrently with this motion."

{¶ 9} A hearing was scheduled for March 14, 2019, to consider Mohler's motion for tutoring for I.F. At the hearing, a discussion was held regarding whether appellant had filed a grievance against Mohler, and whether the hearing could continue with Mohler representing I.F. in light of a possible grievance. The trial court questioned appellant as to whether a grievance was filed, and appellant responded as follows: "[n]ot that I know of"; "I'm contemplating filing a grievance but I have not filed one"; "I just hadn't gotten around to filing yet"; "I did not file a grievance"; "I haven't decided [whether or not to file a grievance]; and "I might [file a grievance]. Haven't decided yet." In addition, appellant stated "What I have, first, Your Honor, is a motion in front of

3.

you asserting that Mr. Mohler's [attorney's] fee is excessive * * * I don't think I have to elect filing a motion in front of this Court or filing a grievance."

{¶ 10} On April 4, 2019, the trial court issued its decision, which included the following:

On March 11, 2019, [appellant] notified the Court as part of his objections to Mr. Mohler's fee request, that he had filed a grievance against Mr. Mohler.

* * *

At the outset of these proceedings in an effort to set the standard of conduct the Court expects, the lawyer's oath was read in open court to all [of] the parties and counsel.

[Appellant] has not followed that standard. Even at the last hearing, [the guardian ad litem ("GAL")] was again complaining about his conduct. By his pleadings, e-mails and exhibits, [appellant] has, at the least, been unprofessional toward the magistrate, * * * his former lawyer, * * * [GAL], * * * and his opposing counsel * * *. During the last telephone pre-trial [appellant] attacked [opposing counsel] twice.

[Appellant] has had discovery disputes with almost every lawyer in the case.

[Appellant] has repeatedly been advised to seek representation.

Having reviewed all [of] the conduct, evidence, exhibits, e-mails and testimony of the case, and particularly [appellant]'s most recent pleading, the Court finds [appellant] in direct contempt pursuant to RC 2705.01. He is sentenced to 30 days in [jail]. * * *

The Court finds that [appellant] was untruthful. He claims to have filed a grievance against Mr. Mohler. That was not true, no grievance was filed. His pleading was an attempt to mislead the Court, obstruct justice and prejudice the administration of justice. Such a grievance, if true, would impede and eliminate Mr. Mohler from representing his client. * * * If [appellant] had a grievance, he is duty bound to file it. He did not do so.

{¶ 11} At a hearing on the afternoon of April 4, 2019, appellant was advised of the decision finding him in contempt. The judge stayed imposition of the jail sentence until April 8, 2019; appellant appealed. We stayed execution of appellant's sentence until further order.

## Appellant's Arguments

{¶ 12} Appellant sets forth six bases upon which the April 4, 2019 decision finding him in contempt order was grounded:

(1) The GAL for I.F. complained about appellant's conduct at the March 14, 2019 hearing;

(2) Appellant was unprofessional to fellow lawyers, including the magistrate, GAL, his former counsel and opposing counsel in pleadings, emails and exhibits;

(3) Appellant attacked opposing counsel twice in a telephone pre-trial;

(4) Appellant had discovery disputes with almost every lawyer in the case;

(5) Appellant proceeded pro se, and was repeatedly advised to seek counsel;

(6) Appellant claimed he filed a grievance against Attorney Mohler, yet no grievance was filed.

{¶ 13} Appellant asserts none of the foregoing constitute direct, criminal contempt.

### Standard

{¶ 14} The standard of review for contempt of court is abuse of discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991); *Wood Cty. Health Dist. v. Bauer*, 6th Dist. Wood No. WD-17-043, 2018-Ohio-5203, ¶ 7. An abuse of discretion is more than error of law or judgment; it indicates the trial court's attitude is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

6.

**Law**

{¶ 15} Contempt of court has been defined as the disobedience of a court order, and "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Id.* at paragraph two of the syllabus. The power to find an individual in contempt "is inherent in a court, such power being necessary to the exercise of judicial functions." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988).

{¶ 16} Contempt is classified as direct or indirect. *Ginsburg v. Haddad*, 6th Dist. Erie No. E-95-001, 1995 WL 571409, *3-4 (Sept. 29, 1995). Direct contempt entails "a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice," which may be summarily punished by the court. R.C. 2705.01. In contrast, indirect contempt occurs outside of the presence of the court and includes "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer[.]" R.C. 2705.02(A). Prior to imposing a punishment for indirect contempt, the contemnor must be afforded certain procedural safeguards, including an adversary hearing. R.C. 2705.03.

{¶ 17} In order to avoid misapplication or abuse of the contempt power, the United States Supreme Court has directed that summary, direct contempt proceedings be confined to misconduct which occurring in open court "'which disturbs the court's

7.

business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public.'" (Citations omitted.) *Pounders v. Watson*, 521 U.S. 982, 988, 117 S.Ct. 2359, 138 L.Ed.2d 976 (1997).

{¶ 18} Contempt is further classified as either criminal or civil, with the distinction centering on the purpose and the nature of the punishment imposed. *Newcomer v. Newcomer*, 6th Dist. Nos. L-10-1299, L-10-1357, 2011-Ohio-6500, ¶ 45. Criminal contempt is usually characterized by an unconditional prison sentence, and evidence of guilt must be proven guilty beyond a reasonable doubt. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 251, 254, 416 N.E.2d 610 (1980). With civil contempt, the sentence is conditional or remedial, and the contemnor will be absolved if the contemnor complies with the contempt order. *Id.* at 253. Moreover, "[t]he purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court." *Windham Bank*, 27 Ohio St.2d at paragraph three of the syllabus, 271 N.E.2d 815.

{¶ 19} Since contempt actions affect personal liberty, the proceedings and due process safeguards governing them must be strictly construed. *Haas v. Jennings*, 120 Ohio St. 370, 378, 166 N.E. 357 (1929). "'The charge, the findings, and the judgment of the court thereon are to be construed strictly in favor of the accused.'" (Citation omitted.) *In re Contemnor Caron*, 110 Ohio Misc.2d 58, 110, 744 N.E.2d 787 (C.P.2000).

8.

**Analysis**

{¶ 20} A review of the record shows the trial court found appellant in direct, criminal contempt of court. The court specifically indicated in its decision that appellant was in direct contempt, and sentenced him to 30 days in jail. Although the court stated at the hearing that appellant could avoid the 30-day jail sentence if he obtained a lawyer and settled the divorce case, this allowance was only offered in response to appellant's inquiry as to how he could escape or avoid the sanction. Clearly, the purpose of ordering the jail sentence was to punish appellant for his prior conduct. In fact, the April 4, 2019 decision reflects as much, as the court did not provide any purge provisions for the 30-day jail sentence. We therefore find the contempt proceeding against appellant was criminal in nature.

{¶ 21} We further find that the grounds upon which the trial court based its finding that appellant was in direct contempt were insufficient to support such a conclusion. While the record reveals certain misconduct occurred in the court's presence, not all of the essential elements of misconduct specified by the court for finding appellant in direct contempt of court transpired in open court. Further, not all of the misconduct was actually observed by the court. *See Pounders v. Watson*, 521 U.S. at 988, 117 S.Ct. 2359, 138 L.E.2d 976. As such, the acts cited by the trial court were not directly contemptuous and were not punishable under R.C. 2705.01, the law of direct contempt. Thus, we find the trial court abused its discretion in finding appellant in direct, criminal contempt of court. Accordingly, appellant's first assignment of error is well-taken.

9.

## Assignment of Error Two

{¶ 22} In light of our finding that appellant's first assignment of error is well-taken, appellant's second assignment of error is rendered moot.

## Assignment of Error Three

{¶ 23} Appellant asserts the trial court's September 11 and 23, 2019 indirect, criminal contempt orders are not supported by the evidence.

{¶ 24} The events preceding the September 2019 contempt orders include the following.

## Relevant Events

{¶ 25} On August 6, 2019, both parties executed an offer to purchase the marital home.

{¶ 26} On August 21, 2019, appellee filed an emergency motion for appellant to cooperate with the closing of the sale of the marital home or, in the alternative, for ownership of the home to be transferred to appellee. The closing was scheduled for September 9, 2019.

{¶ 27} On August 27, 2019, a hearing was held on appellee's emergency motion; appellee attended the hearing, appellant did not. That same day, the trial court issued a judgment entry with numerous orders including: (1) the home be conveyed or transferred to appellee, (2) appellee shall attend the closing, (3) the closing will occur by September 9, 2019, (4) appellant "is hereby foreclosed from interfering with this closing in any manner whatsoever," and (5) "the parties shall appear for a show cause hearing on

10.

September 9, 2019 at 1:30 p.m. if all of the provisions of this Judgment Entry are not complied with."

{¶ 28} In an e-mail dated September 6, 2019, appellant represented to the attorney for the title agency handling the closing that he (appellant) "was not planning to attend. I am planning to appeal."

{¶ 29} On the morning of September 9, 2019, appellee appeared for the closing, appellant did not. The closing did not go forward. According to correspondence from the closing agent for the title agency, "it did not close because [appellant's] right to appeal has not expired."

{¶ 30} On the afternoon of September 9, 2019, a show cause hearing was held. Appellee attended the hearing, appellant did not. Appellee testified that appellant did not file an appeal prior to closing. She also stated appellant had to sign off on his dower interest in the marital home. Appellee's attorney indicated the dower document and other documents were prepared for the closing but appellant failed to appear at the closing and none of the documents were signed. Appellee also testified that due to appellant's delay in removing his items from the home, she incurred additional expenses.

{¶ 31} At the conclusion of the hearing, the trial court made several oral pronouncements, including the following. The court found appellant in contempt of court for failing to attend the closing pursuant to the court's order and failing to comply with the court's order. The court ordered appellant to pay the costs of the show cause motion, attorney fees for the motion, and costs and fees associated with the failure to close and his interference with the closing. The court further ordered appellant to appear and show

11.

cause why he should not be held in contempt for failing to appear for the hearing. In addition, the court sentenced appellant to 30 days in jail, and "[h]is purge provision will be to pay the attorney fees, and attend and/or * * * see to it that the property closes. * * * If he doesn't complete the closing, he's going to jail. * * * His other fines and fees or any costs associated with the * * * failure to close."

{¶ 32} On September 11, 2019, the trial court issued a judgment entry in which the court ordered that appellant "is found to be in contempt of court for failure to attend the closing scheduled for September 9, 2019 at 9:00 a.m. pursuant to the order of this Court entered on August 27, 2017 * * * and is hereby sentenced to thirty (30) days in the Wood County jail." The court further ordered that appellant could purge the contempt by completing all of the purge provisions by September 20, 2019: (1) sign all necessary documents to close on the sale of the house; (2) pay appellee's attorney fees and costs "relating to his refusal to comply with the Court's orders regarding the real estate," totaling $2,970; and (3) pay all expenses incurred by appellee relating to his refusal to comply with court orders regarding the sale of the real estate and division of personal property, totaling $1,947.19. The court also ordered appellant to appear for a hearing. In addition, other orders were entered by the court. On September 13, 2019, the trial court filed a nunc pro tunc judgment entry with respect to two of the other orders of the September 11, 2019 judgment entry.

{¶ 33} On September 23, 2019, a hearing was held, attended by both appellee and appellant. The trial court determined that appellant had not met all of the purge provisions of the September 11, 2019 contempt order because, although the house closing

12.

had occurred, appellant had not paid the expenses and costs by September 20, 2019. The court orally imposed the 30-day jail sentence, and appellant was taken into custody.

{¶ 34} On September 23, 2019, an order was filed by the trial court. The court set forth that a hearing was held "to determine if the purge provisions of the previous contempt order have been complied with. The court finds that the [appellant] has failed to comply with the purge" and ordered the 30-day jail sentence imposed.

{¶ 35} On September 24, 2019, appellant appealed the September 23, 2019 order.

{¶ 36} An emergency hearing was scheduled for September 25, 2019, but the parties reached an agreement. Appellant was ordered released from jail on September 25, 2019. A joint consent entry was filed on October 10, 2019.

{¶ 37} On November 14, 2019, a show cause hearing was held regarding why appellant should not be held in contempt for failing to appear for the September 9, 2019 hearing. The trial court found appellant was in contempt of court. No judgment entry was filed.

### Appellant's Arguments

{¶ 38} Appellant submits the September contempt orders purport to be indirect, civil contempt, but he was actually held in indirect, criminal contempt. Appellant asserts the September 23, 2019 contempt order was based on his alleged failure to obey the trial court's August 27, 2019 order. Appellant contends he was not ordered, on August 27, 2019, to attend the September 9, 2019 closing. Appellant further argues the August order specified the September 9, 2019 hearing would only be held if he "failed to comply with the September 9 order." In addition, appellant claims the September 23, 2019 due

13.

process hearing was supposed to determine whether he was in contempt for failing to appear on September 9, 2019, but the court made the issue about whether the purge provisions had been met. Appellant maintains the September 23, 2019 hearing should have imposed purge provisions.

**Relevant Law**

{¶ 39} "A court of record speaks only through its journal and not by oral pronouncement." *Schenley v. Kauth*, 160 Ohio St. 109, 113 N.E.2d 625 (1953), paragraph one of the syllabus.

{¶ 40} "[W]here the contempt finding is erroneous there is no contempt to be purged and therefore the condition of the purge fails." *Schaeffer v. Buschur*, 1st Dist. Hamilton No. A-8103085, 1985 WL 6746, *1 (Apr. 17, 1985).

**Analysis**

{¶ 41} With respect to the September 11, 2019 judgment entry, a review of the record shows the trial court only found appellant "to be in contempt of court for failure to attend the closing scheduled for September 9, 2019 at 9:00 a.m. pursuant to the order of this Court entered on August 27, 2017 * * *." As the behavior occurred outside of the presence of the court, it would be classified as indirect contempt. However, an examination of the August 27, 2019 judgment entry reveals the court did not order appellant to attend the closing. While the court ordered appellant not to interfere with the closing, appellant was not found in contempt of court for this behavior. Without an underlying order mandating that appellant attend the closing, appellant's failure to attend the closing cannot be construed as a violation of the August 27, 2019 judgment entry, and

14.

cannot form the basis of a contempt finding. We therefore conclude the trial court abused its discretion in finding appellant in contempt of court for failing to attend the closing.

{¶ 42} Regarding the September 23, 2019 judgment entry, a review of the record shows the trial court found appellant had failed to comply with the purge provisions of the September 11, 2019 contempt order, and ordered the 30-day jail sentence imposed. This type of sanction would be considered civil contempt, since appellant was allowed an opportunity to avoid the jail sentence. But, since the purge provisions were based on an erroneous contempt finding, the purge provisions fail, as they were not valid. Thus, we conclude the trial court abused its discretion in finding appellant failed to comply with the purge provisions from the September 11, 2019 contempt order. Accordingly, appellant's third assignment of error is well-taken.

{¶ 43} For the foregoing reasons, the April 4, 2019 and September 11 and 23, 2019 judgments of the Wood County Court of Common Pleas, Domestic Relations Division, are reversed, and the contempt findings and orders are vacated. Pursuant to App.R. 24(A)(4), the costs of this appeal are waived.

Judgments reversed, contempt findings and orders vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       _____
                   JUDGE

Arlene Singer, J.        

                 _____
Gene A. Zmuda, P.J.            JUDGE
CONCUR.

                 _____
                   JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.